THE BREWERS AND MALTSTERS' INSURANCE COMPANY AND OTHERS, RESPONDENTS, *v.* JOHN R. DAVENPORT AND WILLIAM R. WALKER, ASSIGNEES IN BANKRUPTCY, ETC., APPELLANTS.

*Bankruptcy — effect of adjudication on attachment — Action of interpleader — of assignee in bankruptcy with creditor of bankrupt — jurisdiction of State courts over.*

One Davenport, having commenced an action against a corporation created in the State of Missouri, procured an attachment to be issued therein, on the 15th of September, 1873, under which a debt due from the plaintiff to the said corporation was attached. On the 3d of November, 1873, Davenport recovered judgment in the said action and issued execution thereon. On the second of October a petition in bankruptcy was filed against the corporation in Missouri, and on the eighth of November it was duly declared bankrupt.

Davenport and the assignee in bankruptcy each claiming the money, the plaintiff brought this action, praying that the court would decide which of the two were entitled to receive the same. *Held,* that as the attachment was issued within four months of the filing of the petition, it was annulled by the subsequent adjudication, and that the assignee was entitled to the money.

*Held,* further, that this was not an action to recover assets belonging to the estate of the bankrupt within the meaning of the amendment of the bankruptcy act of 1874, depriving the State courts of jurisdiction over such action, but was brought to secure a decision binding on the contesting claimants, declaring to which of them the debt could lawfully be paid, and that this court had jurisdiction over the same.

APPEAL by the defendant William R. Walker, as assignee in bankruptcy, from a judgment entered on the report of a referee in favor of the defendant John R. Davenport.

*William E. Stiger,* for the appellant.

*R. E. Deyo,* for the respondent.

DANIELS, J.:

The plaintiffs in this action were and are three insurance corporations, associated together under the name of the Inland Insurance Union. They were indebted in the sum of $935 to the North Missouri Insurance Company, which was a corporation created by and existing in the State of Missouri. The latter company was indebted to the defendant John R. Davenport, who, on the 15th of September, 1873, in an action then commenced by him for the recovery of his debt, by a warrant of attachment issued in that action, seized and attached the debt owing from the plaintiffs to that company. While that action was pending, and on the 2d day of October, 1873, a petition in bankruptcy was filed with the clerk of the United States District Court for the eastern district of Missouri against the North Missouri Insurance Company. After the commencement of that proceeding, and on the 3d day of November, 1873, the defendant Davenport recovered and entered judgment in the action commenced by him, and execution was at the same time issued upon it to the sheriff of the county of New York. On the 8th of November, 1873, which was five days after the defendant Davenport recovered his judgment and issued execution upon it, the North Missouri Insurance Company was declared a bankrupt, in the proceeding instituted by the petition filed on the second day of the preceding October. The defendant William R. Walker was regularly appointed assignee of the bankrupt, and on the 23d of

March, 1874, an assignment was executed to him by a register in bankruptcy residing in the eastern district of Missouri, by which all the real and personal estate of the bankrupt, including all the property of whatever kind possessed by, or in which it was interested, or entitled to have, on the day when the petition was filed, was assigned to him. Under and by force of that assignment the assignee claimed the moneys owing from the plaintiffs to the bankrupt. A portion was also claimed by another defendant, who finally practically abandoned the claim made by him; and the entire debt was also claimed by the defendant Davenport under his attachment, the judgment recovered by him, and the execution issued upon it. The plaintiffs commenced this action thereupon to secure the determination of this court upon the rights of the adverse claimants, and the money has been placed in its custody for payment to the party appearing to be entitled to receive it. The referee held that it was legally payable to the creditor under the attachment and the judgment, and from that determination the assignee in the bankruptcy proceedings has taken the present appeal. The correctness of the decision which has been thus brought in question depends upon the construction which should be given to the provision contained in the bankrupt law, declaring the effect of the assignment made under its authority. That seems to be the same now that it was before the revision of the United States statutes, and it was enacted in the following terms: "As soon as an assignee is appointed and qualified, the judge, or where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books and papers relating thereto, and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings." (U. S. Rev. Stats., 980, § 5044.) To be avoided by means of this provision of the statute, it was held, upon the trial, that the property seized must be held under the attachment at the time of the execution of the assignment in

bankruptcy. But that, it is evident, would wholly defeat the operation of the provision made by this section, declaring that the assignment shall relate back to the commencement of the proceedings in bankruptcy. The object of the provision was to render it effectual as of that time, and the succeeding reference relates to the same period. The time of the commencement of the proceedings is the plain antecedent of the following phrase; and it is property then held by attachment on mesne process that was designed to be discharged from such process and vested in the assignee. That was the time, as it was plainly mentioned, at which the assignment was to transfer all the property of the bankrupt, and to render that effectual, the dissolution of the attachment at that time existing was a clear necessity. This construction has been given to this section of the statute in a number of instances, and it has been uniformly held that the assignment took effect upon the bankrupt's property by way of relation, as of the time when the proceedings had been commenced by the filing of the petition. That would not be done if the provision upon this subject could be defeated by the recovery of a judgment in the meantime; and for that reason these authorities in principle are directly in conflict with the position on which this case was disposed of by the referee. (*Pennington* v. *Lowenstein*, 1 Bankruptcy Reg. R., 570 [1st ed., p. 157]; *Matter of Housberger*, 2 id., 92 [1st ed., p. 33]; *Miller* v. *Bowles*, 58 N. Y., 253.) The cases of *Miller* v. *O'Brien* (9 Bankruptcy Reg. R., 26) and *Dickerson* v. *Spaulding* (14 S. C. N. Y. [7 Hun], 288,) are more nearly in point, and they seem to dispose of the case now before the court.

The recovery of the judgment made no change in the rights of the parties to the property, because it was held by force of the attachment alone, when the proceedings in bankruptcy were commenced, and that was dissolved by the assignment as soon as it was delivered. Neither the judgment nor the execution could be a lien upon the property, because it was not capable of being the subject of levy and sale. Being a mere indebtedness, it was incapable of manual delivery, and could only be attached by the delivery of a copy of the attachment with the prescribed notice to the debtor; and if not voluntarily paid after judgment, it could only be recovered by an action prosecuted for that purpose. (Code, 232, 235, 237, subds. 4, 238.)

The money never found its way into the hands of the attaching creditor, and he lost his right to recover it when his attachment was dissolved by the relation and effect of the assignment. The mere recovery of a judgment after the filing of the petition cannot be held to improve the condition of the creditor. A judgment preceding that event stands upon a different principle, and when unaffected by bad faith may be enforced against the property of the bankrupt. (*Wilson* v. *City Bank*, 17 Wall., 473.)

It has been claimed on the part of the respondent that the act of 1874, amending the bankrupt act, has deprived the State courts of all jurisdiction over contests of this nature. But to hold that, would not entitle the respondent to the money in dispute, for the proceedings which are shown to have been had have deprived him of the right to demand and receive the proceeds of the debt he had attached. The court was certainly competent to decide that portion of the controversy, notwithstanding the change which has been made by this amendment of the law.

But this was not an action for the recovery of the assets of the bankrupt, and for that reason not within the inhibiting language of the amendment. It was prosecuted for the purpose of procuring a judgment of this court, declaring to whom of the conflicting claimants the money placed in its custody by the plaintiffs should be paid. The action was not for the collection of the assets of the estate, within the terms used for that purpose in the bankrupt law, but merely to secure a direction binding on the contesting claimants, declaring to whom the debt could be lawfully paid; and it is only when it may be prosecuted to collect the assets of the bankrupt that the recent amendment has conferred exclusive jurisdiction upon the District Courts of the United States. But without infringing upon its terms the debtor is still at liberty to apply to this court for its determination as to the proper party to receive a debt wholly created and arising under the laws of the State. The plaintiffs had a certain sum of money to pay to some person, and desired to place it under the control of the court, to be paid to the person appearing entitled to receive it, and in that way to relieve themselves from all responsibility on account of it. They neither claimed to collect nor contest any thing, but simply to be allowed to place the fund where the person actually entitled to have it could receive it. The case, for

these reasons, was entirely different from that of *Olcott* v. *Maclean*,[*] previously argued and already considered; and it is within the reasoning upon which the jurisdiction of the State court was affirmed in the case of *Cook* v. *Whipple* (55 N. Y., 150). It belonged to a class of cases over which the general jurisdiction of this court extended, independently of the bankrupt law; and. its powers in that respect have not been in terms or by implication contracted by any thing contained in the amendments of 1874. (U. S. Rev. Stats., 969, § 4972; Laws of congress 1874, chap. 390, § 2.)

Upon the facts found by the referee, the respondent Davenport was not entitled to the money which .the plaintiffs had paid into court as the proceeds of the debt owing by them to the bankrupt; and as the proceedings and assignment deprived him of that right, it necessarily followed that the judgment should have directed that the assignee was the proper person to whom payment could be lawfully made. His receipt of it will fully exonerate the plaintiffs, and the determination made against the claim of the defendant Davenport will be forever conclusive against his title. The judgment should, therefore, be reversed and judgment to the effect already indicated entered upon the report of the referee.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed and judgment ordered on the report of the referee, as directed in opinion.